**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY ESTREMA,<br><br>Plaintiff,<br><br>v.<br><br>WISE FOODS, INC. and<br>ARCA CONTINENTAL,<br><br>Defendants. | No. 4:25-CV-01956<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**JULY 31, 2026**

## I. BACKGROUND

Plaintiff Anthony Estrema ("Plaintiff") filed a complaint against Defendants Wise Foods, Inc. ("Wise") and Arca Continental ("Arca") (collectively, "Defendants") seeking redress for breach of contract and, alternatively, promissory estoppel.[1] Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2] The motion is now ripe for disposition. For the reasons that follow, it is denied.

---

1 Doc. 1 (Compl.).
2 Doc. 5 (Mot.).

## II. LAW

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and *Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

### B. Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

---

[3] 550 U.S. 544 (2007).
[4] 556 U.S. 662 (2009).
[5] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[6] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

Plaintiff was employed as a tractor trailer driver for Defendants for over a decade.[7] During that time, he serviced a number of retailers, including one in Queens, New York.[8] The retailer in Queens stole product from Plaintiff's truck on a number of occasions without his knowledge, resulting in an investigation into Plaintiff.[9]

On or about October 17, 2023, Plaintiff's manager, John Culpepper ("Culpepper") called Plaintiff into his office.[10] Culpepper told Plaintiff that he had violated Defendants' company policies by failing to properly check inventory on his truck, and advised him of the ongoing investigation into Plaintiff's involvement in the missing goods.[11]

During this conversation, Culpepper informed Plaintiff that, if Plaintiff resigned his position from the Defendants, Defendants would give Plaintiff a "neutral recommendation" for future employers in which Defendants would state "only that the Plaintiff worked for the Defendants for certain dates and resigned for personal reasons."[12] Culpepper told Plaintiff that it was in Plaintiff's best interest to resign, and that, if he did so, nothing negative about Plaintiff would be disclosed to future employers.[13]

---

7 Doc. 1 at ¶ 6.
8 *Id.* at ¶ 7.
9 *Id.* at ¶¶ 8, 9.
10 *Id.* at ¶ 9.
11 *Id.*
12 *Id.*
13 *Id.* at ¶ 10.

Based on these representations, Plaintiff resigned from his position with Defendants.[14] Plaintiff then applied for employment with Watsontown Trucking ("Watsontown").[15] Initially, Watsontown told Plaintiff that it would hire him.[16] However, Watsontown then changed its position, informing Plaintiff that it would not hire him because Defendants had provided "bad references" concerning Plaintiff's employment there.[17] Plaintiff also claims that Defendants refused to acknowledge to other potential employers that Plaintiff had been employed by Defendants at all.[18]

As a result, Plaintiff lost an employment opportunity with Watsontown. Plaintiff could not find any other employment as a truck driver, and claims two million dollars in damages for Defendants' actions. Plaintiff then filed the instant action against Defendants.

**C. Analysis**

Plaintiff asserts claims for breach of contract and, alternatively, promissory estoppel.[19] Defendants move to dismiss both claims. I analyze each in turn.

---

14 *Id.* at ¶ 11.
15 *Id.* at ¶ 12.
16 *Id.*
17 *Id.*
18 *Id.* at ¶ 15.
19 To note, Plaintiff does not explicitly plead promissory estoppel as a claim in his complaint. Doc. 1. However, "[p]romissory estoppel may be asserted as a valid alternative theory of relief to a breach of contract claim." *Calderwood v. Rinsch*, 2022 WL 17251755, at *4 (E.D. Pa. Nov. 28, 2022) (citing *Cornell Co., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 266 n.19 (E.D. Pa. 2007)). Moreover, Federal Rule of Civil Procedure 8(a)(2) "does not require that the pleader specifically identify each claim by placing it in the heading of a count" so long

### 1. Breach of Contract

"Under Pennsylvania law, a breach of contract claim has three elements: (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages."[20] "An enforceable contract has three elements: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently defined terms, and (3) an agreement supported by adequate consideration."[21]

"Generally, the first element of contract formation—manifestation of an intent to be bound—is established through evidence of offer and acceptance."[22] As to the second element, that "the terms of the bargain be set forth with sufficient clarity, "[a]n agreement is sufficiently definite and will not fail for vagueness if the parties intended to make a contract and the terms provide a reasonably certain basis for a court to give an appropriate remedy."[23] Even where a necessary term is omitted from the bargain, if parties "otherwise manifested their mutual assent to the agreement

---

as the complaint sets forth a short and plain statement of the claim showing that the pleader is entitled to relief. *See Duff Supply Co. v. Crum & Forster Ins. Co.*, 1997 WL 255483, at *7 (E.D. Pa. May 8, 1997).

Defendants note, but do not argue substantively, that Plaintiff's complaint did not plead a promissory estoppel claim. Doc. 14 at 4. As Defendants do not press the issue, neither will the Court. It appears that all parties are aware of which two claims Plaintiff's complaint intended to bring, and both parties have addressed the substance of those claims. Accordingly, for judicial efficiency, the Court will analyze both breach of contract and promissory estoppel now.

20 *EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320, 327-38 (M.D. Pa. 2025) (Brann, J.) (internal quotations omitted).

21 *Ruggiero v. Nocenti*, 556 F. Supp. 3d 512, 522 (E.D. Pa. 2021).

22 *Ruggiero*, 556 F. Supp. 3d at 522.

23 *EuroOptic*, 781 F. Supp. 3d at 328 (internal quotation omitted).

and the terms of that agreement are sufficiently definite"[24] such that the Court can readily infer the parties' intent, a contract may be found.[25] For example, "'contracts that are silent as to their duration will ordinarily be treated . . . as operative for a reasonable time.'"[26] "The third and final element of contract formation—consideration—is an act, forbearance, or return promise bargained for and given in exchange for the original promise."[27]

Unilateral contracts, as opposed to bilateral contracts, involve one promise, and are formed "when one party makes a promise in exchange for the other party's act or performance."[28] A unilateral contract is enforceable at such time as the offeree completes performance.[29] "Oral contracts may exist under Pennsylvania law, but the party relying upon an alleged oral contract must prove that a mutual intent to be bound was manifested, even though it was not memorialized in writing."[30] "[I]n the case of a disputed oral contract, what was said and done by the parties, as well as

---

24 *Id.*

25 *Klimenko v. Denaburg*, 2025 WL 3215235, at *6 (Pa. Super. Ct. 2025) ("Such an agreement need not include every necessary term . . . where an essential term is missing or not clearly expressed, the court may infer the parties intent from other evidence and impose a term consistent with it.") (internal quotations omitted).

26 *Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 637 (E.D. Pa. 2023) (quoting *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015)).

27 *Ruggiero*, 556 F. Supp. 3d at 523.

28 *First Home Sav. Bank, FSB v. Nernberg*, 436 Pa. Super. 377, 387-88 (Pa. Super. Ct. 1994).

29 *Id.*

30 *EuroOptic*, 781 F. Supp. 3d at 327-28 (internal quotations omitted).

what was intended by what was said and done by the parties, are questions of fact to be resolved by the trier of fact."[31]

Here, Defendants raise two arguments, asserting first that Culpepper did not manifest "an intent to be bound" and, second, that any agreement did not have sufficiently definite terms. Neither is persuasive.

First, Plaintiff has pled sufficient facts rendering it plausible that Culpepper manifested an intent to be bound. Plaintiff's allegations describe a conversation where Culpepper made an offer: if Plaintiff resigned, Defendants would give Plaintiff a neutral recommendation.[32] Culpepper encouraged Plaintiff to resign, and stated specifically what he, Culpepper, would do if Plaintiff resigned; namely, Culpepper explained that he would not disclose the negative details of Plaintiff's work to other employers, that he would confirm Plaintiff worked there for set dates, and that he would give employers a neutral recommendation.[33] These allegations, accepted as true, show a plausible intent to be bound, manifested by Culpepper to Plaintiff. In other words, Culpepper made a specific and clear offer.

Defendant disputes Plaintiff's characterization of this conversation, asserting that Defendants were not "trying to enter into a contract with an employee who

---

[31] *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 441 Pa. Super. 281, 291 (Pa. Super Ct. 1995).

[32] Doc. 1 at ¶¶ 9-11.

[33] *Id.*

violated company policies."[34] Defendants also argue that "the broader circumstances between the parties suggest that Estrema resigned to avoid an investigation."[35] However, at this stage, the Court accepts Plaintiff's description of this conversation, and does not inquire into the veracity of the allegations. Based on Plaintiff's pleadings, Culpepper plausibly offered Plaintiff the option to resign in exchange for Defendants' neutral recommendations to future employers. Therefore, intent to be bound has been sufficiently pled.

Next, Defendants argue that Plaintiff has not pled sufficiently definite terms to render this contract enforceable. Not so. Plaintiff has pled that Culpepper's offer included specific actions to be taken by Plaintiff (resigning) in exchange for discrete acts by Defendants (neutral recommendations and affirming to employers that Plaintiff worked there for set dates).[36] These terms as pled are sufficiently definite such that the Court can readily infer parties' intent.

Defendants compare this situation to *Legendary Art, LLC v. Godard*, where the generalized offer to "tell 'all his friends and business associates'" about a product

---

[34] Doc. 6 at 9. In arguing to dismiss this claim, Defendants commit a *faux pas*, or perhaps a Freudian slip, arguing that "the surrounding circumstances suggest that Estrema was given *an offer* to resign, as a way of avoiding an investigation into the missing inventory on his truck." Doc. 6 at 9. Indeed, the pleadings *do* indicate that the conversation here was an offer to Plaintiff, and intent to be bound is typically determined by looking to whether there was offer and acceptance. Defendants may dispute exactly *what* was offered in exchange for resignation, and they may assert that Defendants offered only to stop the investigation rather than offering to give Plaintiff neutral recommendations. However, such an argument goes to determining the truth of what was offered, not to the plausibility of Plaintiff's pleadings.

[35] Doc. 14 at 2.

[36] Doc. 1 at ¶¶ 9-11.

was insufficiently definite.[37] Unlike *Legendary Art*, the offer in the case at bar was for a discrete performance that can be readily discerned: giving a neutral recommendation and confirming employment to future employers who inquired about Plaintiff's time spent working for Defendants.

Defendants assert that the failure to specify the applicable "future employers" and the lack of a durational clause render the contract unenforceable.[38] I respectfully disagree. Based on the alleged conduct in this meeting, parties' intent can be easily discerned, even without a durational element. Therefore, the durational clause is not an essential element to this contract.[39] Accordingly, Plaintiff has pled sufficiently definite terms to raise a plausible breach of contract claim. Whether these were the actual terms agreed upon and whether Defendants satisfactorily performed under this agreement are issues of fact, and shall not be addressed at this stage in the litigation.

As Defendants only disputed the requirements for intent to be bound and definite terms, and as both those arguments have failed, Defendants' motion to dismiss Plaintiff's breach of contract claim is denied.

---

37 Doc. 6 at 10; 888 F. Supp. 2d 577, 588 (E.D. Pa. 2012).

38 Doc. 6 at 8-9.

39 Even if duration were an essential term, the contract would be read to operate for a reasonable time period. *Clemens*, 678 F. Supp. 3d at 637. Plaintiff has pled that this was the first employer he applied to after resigning. Doc. 1 at ¶ 12. Even if Defendants' argument regarding the lack of durational clause had merit, this employer is clearly within the bargained-for agreement.

### 2. Promissory Estoppel

In the alternative, Plaintiff asserts promissory estoppel.[40] "The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though that promise is not supported by consideration."[41] "Promissory estoppel is an equitable remedy, invoked to avoid injustice, which makes otherwise unenforceable agreements binding."[42]

"Under Pennsylvania law, a court may enforce a promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise."[43]

The promise must be sufficiently definite, certain, and explicit to reasonably ascertain the full intention of the parties.[44] A "broad and vague implied promise" is insufficient.[45] Additionally, whether it is necessary to enforce a contract to avoid injustice depends on "the reasonableness of the promisee's reliance, on [the promise's] definite and substantial character in relation to the remedy sought, on the

---

40 Doc. 1 at ¶ 11; Doc. 13 at 6.
41 *Cornell*, 512 F. Supp. 2d at 266 (internal quotation omitted).
42 *Lascoli v. Thomas A. Fahr Masonry Contractors*, 355 A.3d 975, 986 (Pa. Super. Ct. 2026).
43 *EuroOptic*, 781 F. Supp. 3d at 330 (internal quotation omitted).
44 *See C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988); *Engstrom v. John Nuveen & Co., Inc.*, 688 F. Supp. 953, 961-62 n.3 (E.D. Pa. 1987); *Ankerstjerne v. Schlumberger Ltd.*, 2004 WL 1068806, at *6 (E.D. Pa. May 12, 2004).
45 *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51 (3d Cir. 2005).

formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant."[46]

Here, Defendants argue first that the promise was too vague to ascertain the parties' intention and, second, that it was unreasonable for Plaintiff to rely on the promise. Neither argument is persuasive.

First, for largely the same reasons stated above regarding the breach of contract claim, the promise in this case was sufficiently definite to readily ascertain what Culpepper intended to do if Plaintiff resigned. Specifically, Culpepper stated that he would affirm the dates Plaintiff worked with Defendants and give a "neutral" recommendation to future employers.[47] This was not a "mere expression[] of intention, hope, desire, or opinion [] which show[ed] no real commitment;"[48] rather, Culpepper's alleged statements offered a clear course of action. From the pleadings, Culpepper's words plausibly offered an express promise of sufficiently specific action to meet this element of promissory estoppel.

Next, Defendant argues that it was not reasonable for Plaintiff to rely on Culpepper's statement.[49] Defendant's main contention for this element is that the

---

46 *EuroOptic*, 781 F. Supp. 3d at 330 (internal quotation omitted).
47 Doc. 1 at ¶¶ 9-11.
48 *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 634 (3d Cir. 2013) (internal quotation omitted)
49 Doc. 14 at 5-7.

conversation was not sufficiently formal,[50] which is one of the considerations in determining whether enforcement is necessary.[51] I disagree. Plaintiff has pled that he was "called into the office of the Defendants' manager, John Culpepper" to discuss his employment and the ongoing investigation into his conduct.[52] It was reasonable for Plaintiff to rely on statements from his supervisor regarding matters of his employment and future recommendations, as his supervisor would likely be integrally involved in such matters. This is precisely the kind of meeting where an employee would expect to receive updates and information about his employment from his employer's agent.[53]

Moreover, Culpepper's proffered action is not facially unreasonable considering the "definite and substantial character [of the promise] in relation to the remedy sought."[54] Given the circumstances as pled, it is believable that an employer would offer a neutral recommendation as an option to avoid the difficulties of an investigation and forced termination. Indeed, Culpepper purportedly encouraged Plaintiff to take this action, stating that it was "in the Plaintiff's best interest to

---

50 *Id.*
51 *EuroOptic*, 781 F. Supp. 3d at 330, 332.
52 Doc. 1 at ¶ 9.
53 *Id.* Defendants argue that "[t]he meeting did not take place to make a formal offer to Eestrema to resign" and that "there are no facts showing it was reasonable for Estrema to interpret Culpepper's alleged statements" in such a way. Doc. 14 at 6. The Court wonders where else, if not the office of his direct manager, would an employee be likely to receive notifications about his termination options. Based on Plaintiff's allegations of the statements, it would be seemingly unreasonable for Plaintiff to take Culpepper's representations any other way.
54 *EuroOptic*, 781 F. Supp. 3d at 330.

resign" and that, if he did so, "the details of his work [with Defendants] would not be disclosed."[55] Culpepper was actively encouraging Plaintiff to rely on his statements when determining whether to resign or not. Thus, it was plausibly reasonable for Plaintiff to rely on this promise.

Considering the reasonableness of Plaintiff's reliance, including the concrete and discrete nature of Culpepper's proffered action and that the promise was made by Plaintiff's supervisor in his office during a meeting about Plaintiff's employment, it is plausible that enforcement of this promise is necessary to avoid working injustice on Plaintiff.

As Defendants dispute only the definiteness of the promise and the reasonableness of Plaintiff's reliance on it, and as both of Defendants' arguments fail, Defendants' motion to dismiss Plaintiff's promissory estoppel claim is denied.

## III. CONCLUSION

Defendants' motion to dismiss is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

55 Doc. 1 at ¶ 10.